**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| MATTHEW STARNES, | Case No. 14-cv-1159 (MJD/SER) |
| Petitioner, | |
| v. | |
| STATE OF MINNESOTA, | **REPORT AND RECOMMENDATION** |
| Respondent. | |

STEVEN E. RAU, United States Magistrate Judge

This matter is before the undersigned on the petition of Matthew Starnes ("Starnes"), for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The parties have briefed the issues fully. ECF Nos. 1, 4, 14, 18. The case has been referred for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Starnes' habeas corpus petition be DENIED, and that this action be DISMISSED WITH PREJUDICE.

I.      **BACKGROUND**

In November 2012, Starnes was found guilty of first-degree burglary and receiving stolen property and was acquitted of a charge of financial transaction card fraud and third-degree burglary. *State v. Starnes*, No. A13-0307, 2014 WL 211304, at *1 (Minn. App. Jan. 21, 2014). Starnes was sentenced to an executed prison term of fifty-one months for the burglary conviction and a concurrent jail sentence of 133 days for the receipt of stolen property conviction. Respondent's Answer in Opposition to Habeas (hereinafter "Habeas Answer") at 2, ECF No. 14;

1

Appellant's Brief to Minnesota Court of Appeals, Resp. Ex. 6 (hereinafter "Appellant's Brief") at 2, ECF No. 14-3.[1] He was also ordered to pay $775 in restitution. Habeas Answer at 5; Appellant's Brief at 2. The Minnesota Court of Appeals affirmed Starnes' conviction and sentence on January 21, 2014, and the Minnesota Supreme Court denied review on March 26, 2014. *Starnes*, 2014 WL 211304 (Minn. App. Jan. 21, 2014), *review denied*, (Minn. Mar. 26, 2014).

## II.    FACTS

Starnes' convictions stemmed from two home burglaries that occurred in July of 2012. *Starnes*, 2014 WL 211304 at *1; Habeas Answer at 6; Appellant's Brief at 5. A third home burglary and car theft is relevant, but he was not charged with those crimes. In the first burglary, Edward Hillyer's stereo speakers and amplifier were stolen from a car parked in his detached garage. *Starnes*, 2014 WL 211304 at *1. Hillyer had a serial number for the amplifier, which was subsequently found at a Pawn America store in Coon Rapids. *Id.* at *1. Starnes' name was on the receipt for the amplifier and he was seen on the pawn shop's security video. *Id.* at *1; Appellant's Brief at 6; Habeas Answer at 7. In the second burglary, Susan Campbell and Larry Petersen discovered that Campbell's purse, Petersen's laptop, and some DVD movies and Wii games were missing from their home early one morning. *Starnes*, 2014 WL 211304 at *1. It was later confirmed that Starnes had pawned some of the movies at a Pawn America store in Fridley. *Id.* at *1. Campbell discovered that the credit card in her stolen purse had been used at a nearby BP gas station on the night of the burglary. *Id.* at *1. Darlene Peach, who lived near

---

[1] Respondent provided excerpts from portions of the trial that were relevant to Starnes' claims instead of the entire transcript. Habeas Answer at 4. The Court has included facts not found in the Minnesota Court of Appeals opinion for context. For those facts, which are undisputed, the Court cites to the parties' briefs before the Minnesota Court of Appeals and before this Court.

the Campbell/Petersen townhome, told police that she saw a black man wearing a white t-shirt and baseball cap leave the back door of her apartment building around midnight on the night of the burglary.[2] *Id.* at \*1. At trial, the prosecution showed surveillance footage of a black man wearing a white t-shirt and black shorts walking around the BP gas station where Campbell's credit card was used and then driving away. *Id.* at \*1.

A third burglary in the same month occurred at the home of Jessica Ray ("Ray"). Respondent's Brief to Minnesota Court of Appeals, Resp. Ex. 8, at 11 (hereinafter "Respondent's Brief to Minnesota Court of Appeals"); Appellant's Brief at 8. A Mitsubishi car, checks, and a Nintendo console and games were stolen. *Id*. Starnes was not charged with this burglary. Nevertheless, Starnes called two police officers to the stand who investigated that case and one of the defendants, Timothy Thigpen. Respondent's Brief to Minnesota Court of Appeals at 11-12; Appellant's Brief at 8-9 & n. 1. The police found Ray's Mitsubishi car in a parking lot on July 30, 2012. *Starnes*, 2014 WL 211304 \*1; Habeas Answer at 8; Appellant's Brief at 6. A black man wearing dark clothing was walking away from the car when the police found it. *Starnes*, 2014 WL 211304 at \*1. In the car, the police found a black hat and a cell phone with the Facebook page for "Matthew Punkin Starnes" displayed on the screen. *Id*. The police also found a credit card belonging to Susan Campbell and a doo-rag in the car. *Id*. Some of the DNA obtained from the baseball cap and the doo-rag matched Starnes' DNA. *Id*. Timothy Thigpen, Cameron Peasha, and a third man who was a juvenile were arrested for trying to cash forged checks stolen from Ray's home. Respondent's Brief to Minnesota Court of Appeals at 11; Appellant's Brief at 8.

---

[2] Darlene Peach did not testify as to the time of day at trial but the police officer that interviewed her, Officer Desjardin, testified that Peach told him she saw a black man leave her apartment complex "about midnight" on the night of the burglary. Tr. 168-70 (Peach); Tr. at 164 (Desjardin).

On the morning of trial, Starnes expressed concern about his public defender's representation. *Starnes*, 2014 WL 211304 at *1. The judge outlined several options and gave Starnes time to talk with his public defender to decide how he would like to proceed. *Id*. Starnes decided to represent himself, but asked if his public defender could act as standby counsel. *Id*. During the hearing, Starnes waived his right to counsel on the record. *Id*. The trial was continued until the district court could find Starnes standby counsel as his current public defender could not provide that service. *Id*.

At trial, a jury convicted Starnes of first-degree burglary and receiving stolen property and acquitted him of third-degree burglary and financial transaction fraud involving a stolen credit card. *Id*.

Starnes filed this petition for a writ of habeas corpus asserting the same arguments he made on appeal to the Minnesota Court of Appeals. Respondent has not disputed—and the Court assumes for purposes of this motion—that the petition was timely filed and that the claims asserted were exhausted properly. Habeas Answer at 3.

## III. STANDARD OF REVIEW FOR HABEAS CASES

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides the standards that govern this Court's review of Starnes' habeas corpus claims. Section 2254(d)(1) provides that an application for a writ of habeas corpus that has already been decided in state court proceedings shall not be granted unless it was "contrary to, or involved an unreasonable

application of, clearly established Federal law" as decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).[3]

The Supreme Court has determined that:

 [u]nder the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Williams v. Taylor,* 529 U.S. 362, 412-13 (2000).

In other words, a state court would have to either apply the wrong legal rule or apply the right rule to a set of materially indistinguishable facts and come to the opposite result. As a result, "a run-of-the-mill state-court decision applying the correct legal rule" would not provide a basis for granting a writ of habeas corpus under the "contrary to" clause even if the state court's view did not match the  "federal court's conception of how [the rule] ought to be applied in that particular case." *Id*. at 406.

As to the "unreasonable application" clause, a writ of habeas corpus may be granted if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.  The Court has stated that "Congress specifically used the word 'unreasonable' and not a term like

---

[3] Circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Renico v. Lett*, 559 U.S. 766, 779 (2010).  It therefore cannot form a basis for habeas relief.  *See Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012) (reversing the Sixth Circuit where it relied on its own "elaborate multistep test" for prosecutorial misconduct. Supreme Court precedent had used a "highly generalized standard for evaluating" such claims).

'erroneous' or 'incorrect.'" *Id*. at 411. For that reason, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. For the application to be unreasonable, a habeas court must ask "whether it is possible fairminded jurists could disagree that [the arguments or theories that supported the state court's decision] are inconsistent with the holding in a prior decision" of the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). If fairminded jurists could disagree, the high hurdle for a grant of habeas has not been met.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). The more general the rule the state court is applying, the more leeway it has in reaching the outcome. *Id*. at 776 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

A habeas petitioner has a difficult standard to meet and the Supreme Court has said "it was meant to be." *Harrington*, 562 U.S. at 102 (reversing Ninth Circuit's grant of a writ where it engaged in de novo review under the "unreasonable application" clause). "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id*. Section 2254(d) of the AEDPA is meant to "reflect the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems.'" *Id*. at 103 (citation of pre-AEDPA case omitted). The statute, along with the habeas exhaustion requirements, ensures "that state proceedings are the central process, not just a preliminary step for a later federal habeas proceeding." *Id*.

A writ of habeas corpus may also be granted when the state court's judgment is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if 'reasonable minds reviewing the record might disagree' about the finding in question 'on habeas review that does not suffice to supersede the trial court's determination.'" *Id.* (quoting *Rice v. Collins*, 546 U.S. 333, 341-42 (2006)) (involving credibility determinations in juror exclusion case). Additionally, under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." The Supreme Court has not yet determined how these two provisions work together. *Id.* at 301 (declining to decide how §§ 2254(d)(2) and 2254(e)(1) fit together).

## IV. STARNES' CLAIMS

Starnes asserts four grounds for habeas relief. First, he claims that the trial court's decision not to grant him substitute counsel denied him his Sixth Amendment right to counsel. Second, he argues that two evidentiary rulings made by the trial court denied him due process. Third, he claims that the judge and the prosecutor denied him his right to a complete defense by providing an independent lawyer to advise one of Starnes' witnesses of his right against self-incrimination. Fourth, he argues that he was denied due process because the prosecutor failed to abide by a pretrial order regarding certain testimony by a witness.

## V.     SUBSTITUTION OF COUNSEL CLAIM

Starnes contends that his discussion with the trial judge about his dissatisfaction with his appointed lawyer violated his Sixth Amendment right to effective assistance of counsel.  He claims the trial court did not make an adequate inquiry into why he was dissatisfied with his appointed counsel.  Starnes fails to show that the Minnesota state courts' resolution of his "adequate inquiry claim" was contrary to, or involved an unreasonable application of, any rule of federal law the United States Supreme Court recognizes.  Under this exacting standard of review, this Court defers to the Minnesota Court of Appeals.

Starnes' substitution of counsel claim before the Minnesota Court of Appeals was premised upon his view that the trial court failed to conduct an adequate inquiry into the nature of the breakdown of the attorney-client relationship.  In his brief before that court, he argued that his allegations regarding his attorney were sufficient on their face to warrant further inquiry. Appellant's Brief, ECF No.14-3 at 13.  On habeas review by this Court, Starnes must show that the Minnesota Court of Appeals decision is in conflict with United States Supreme Court cases that apply to requests for substitution of counsel.  No such Supreme Court case is identified, or for that matter, exists.  The Supreme Court's cases involve situations where the attorney labored under a conflict by representing multiple defendants or had conflicting loyalties that were more readily apparent than that of Starnes.  *See Holloway v. Arkansas*, 435 U.S. 475, 490-91 (1978) (requiring trial courts inquire into timely objections to multiple representation and that prejudice is automatic); *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) (to demonstrate Sixth Amendment violation where conflict was not raised at trial, a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance; actual conflict is same inquiry as the prejudice prong of ineffective assistance of counsel claim); *Wood v. Georgia*, 450 U.S. 261, 273

(1981) (remanding for inquiry into whether an attorney's representation of employer and employee presented an actual conflict for purposes of the Sixth Amendment).

In this case, there is no indication of multiple representation or divided loyalty on the part of Starnes' counsel. Starnes may have disagreed with his attorney's trial strategy, and he may have believed that his attorney was doing a poor job, but he has not shown (or even alleged) that counsel was disloyal in his defense of Starnes. There is no indication, for example, that the attorney was representing a co-defendant, that the attorney was representing (or had in the past represented) the victim or any adverse witness, that the attorney's representation was affected by any financial considerations, or that the attorney had any type of inappropriate relationship with the prosecutor's office.

Without a conflict of interest claim, Starnes must rely on a substitution of counsel claim that rests on more generalized complaints about his attorney. The Eighth Circuit Court of Appeals has held that "[a] criminal defendant does not have the absolute right to counsel of his choosing," (*Carey v. State of Minnesota*, 767 F.2d 440, 441 (8th Cir. 1985), *cert. denied*, 474 U.S. 1010 (1985)) and that "[s]ubstitution of counsel is a matter committed to the sound discretion of the trial court." *Nerison v. Solem*, 715 F.2d 415, 418 (8th Cir. 1983), *cert. denied*, 464 U.S. 1072 (1984).

A defendant must establish "justifiable dissatisfaction" with his lawyer. This threshold is high because a trial court faced with a request for substitute counsel "must weigh the need to ensure effective legal representation, the need to thwart abusive delay tactics, and the reality that a person accused of crime is often genuinely unhappy with an appointed counsel who is nonetheless doing a good job." *Hunter v. Delo*, 62 F.3d 271, 274 (8th Cir. 1995), *cert. denied*,

528 U.S. 1140 (2000). Thus, a defendant must show "a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant." *Id.* (quoting *U.S. v. Swinney*, 970 F.2d 494, 499 (8th Cir. 1992), *cert denied*, 507 U.S. 1007 (1993)); *see also Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991) (holding that there was a conflict of interest where the defendant was suing his lawyer in a separate civil rights class action and raised this potential conflict and attorney concurred that there might be conflict). To the extent the trial court must conduct an "adequate inquiry," the focus of this inquiry is on the adequacy of counsel, not the defendant's relationship with his lawyer. *U.S. v. Barrow*, 287 F.3d 733, 738 (8th Cir. 2002), *cert. denied*, 537 U.S. 1024 (2002) (outlining the standard for federal trial courts on motion for substitution of counsel; claim not subject to AEDPA standard of review). It is, therefore, not enough for a defendant to be frustrated with counsel "who does not share defendant's tactical opinions but continues to provide zealous representation." *Id.* "[A] defendant has no right to an attorney who will docilely do as she is told . . . or to a meaningful relationship with appointed counsel." *Id.* (internal quotations and citations omitted). "Although the choice between 'an unprepared counsel or no counsel at all may violate the right to counsel, there is no constitutional difficulty where the defendant is provided the real alternative of choosing between adequate representation and self-representation.'" *U.S. v. Rodriguez*, 612 F.3d 1049, 1055 (8th Cir. 2010), *cert. denied*, 562 U.S. 988 (2010) (non-AEDPA case) (quoting *U.S. v. Mentzos*, 462 F.3d 830, 839 (8th Cir. 2006)).

Recently, the Eighth Circuit recognized the distinction between a genuine conflict of interest and other types of conflict within an attorney-client relationship. *See Owsley v. Bowersox*, 234 F.3d 1055 (8th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001). In a substitution of counsel case where no conflict of interest was present, the Eighth Circuit stated that the

petitioner's failure to cite a Supreme Court case involving a conflict-free attorney was the basis for denial of the writ. *Id.* at 1057 (petitioner's allegations of irreconcilable conflict and complete breakdown in communications was insufficient under habeas review standard).

Starnes' failure to satisfy *Owsley's* requirement that Starnes cite a Supreme Court case to support his claim regarding substitution of counsel is fatal. Even under the Eighth Circuit "justifiable dissatisfaction" standard, Starnes substitution of counsel claim fails as this Court will defer on habeas review to the reasonable judgments of the state courts. The Minnesota Court of Appeals focused on the minimal level of conflict between the defendant and his attorney. The Court concluded that Starnes' complaints about his attorney "amount to disagreements on trial strategy between himself and appointed counsel and are not serious allegations of inadequate representation, nor do they identify exceptional circumstances affecting his attorney's ability to represent him." *Starnes*, WL 211304 at *2.

Starnes argues that the judge should have asked for more information about his issues with his attorney. Petition, ECF No. 1 at 10. Nonetheless, Starnes' provided a coherent explanation of his issues with his lawyer when the judge said, "Tell me what it is you want to do here." Starnes replied:

> I feel he's [the lawyer's] not representing me diligently and putting forth effort as necessary for this case. And things that I go over with him, he agrees with me one day and disagrees with the next day. And it just—I have less faith in him the more he does that, so I wouldn't feel comfortable with him representing me at this trial. And I feel that if I'm—if there's going to be any mess-ups, I'd rather it be on my behalf than blaming someone else when I foresee that he is not going to do it diligently.

*Starnes*, 2014 WL 221304 at *2; Tr. at 25.

Nothing in Starnes' statement raised specific problems to the judge regarding the adequacy of his lawyer's representation beyond mere disagreements about strategy. Starnes now argues that "the court had mistakenly concluded that it was the only issue that petitioner had with his attorneys representation." Brief in Support of Petition (hereinafter "Brief"), ECF No. 4 at 8. He does not say what his other issues were but the dialogue with the judge belies his claim that he did not have a chance to state all his issues with his counsel. If Starnes had more to say, he had multiple opportunities to say it.[4]

The Minnesota Court of Appeals also relied on the district judge's statements that the public defender had already obtained favorable rulings and was an excellent attorney. *Starnes*, 2014 WL 211304 at *2. These observations disprove any argument that the adversarial process was being undermined by the lawyer's representation. The transcript shows the judge trying to talk to Starnes' about this decision and to provide his insight about the strength of Starnes' lawyer. Tr. at 26-28. The judge further pointed out that the prosecutor would have a law degree and that the state would try to impeach him with prior convictions, which his lawyer had already very persuasively argued on Starnes' behalf. Tr. at 26-28. Starnes was presented with several options; was given time with his lawyer to think about what he would like to do; and there was an extensive conversation about the provision of standby counsel. Tr. at 28-34. Nothing about the conversation was rushed nor does Starnes seem to be struggling under the weight of his personal conflict with his lawyer as he consults with him and mulls over his decision. He even asks that his lawyer "be able to assist [him] during this trial." Tr. at 29. It seems unlikely that he

---

[4] Starnes also cites to *U.S. v. Webster*, 84 F.3d 1056 (1996) to support his claim. However, that case cuts against Starnes. In that case, the Eighth Circuit affirmed the trial court's decision not to provide substitute counsel where the request was untimely and it "did not even begin to meet the standards for replacement" because "the alleged basis for [the defendant's] complaints had absolutely nothing to do with [the lawyer's] representation. . . ." *Id.* at 1062.

would make this request if the lawyer's representation was irretrievably plagued with problems; rather, it sounds like Starnes wanted to do things his own way. He even said that "if there's going to be any mess-ups" he would rather have only himself to blame. Tr. at 25.

Significantly, the trial court also noted that Starnes' request was "untimely because it was made on the first morning of trial." *Starnes*, 2014 WL 211304 at *3. The trial judge continued the trial in order to find standby counsel to accommodate Starnes' decision to represent himself, but this accommodation does not change the fact that "[l]ast-minute requests to substitute defense counsel are not favored." *U.S. v. Klein*, 13 F.3d 1182, 1185, *cert. denied*, 512 U.S. 1226 (1994).

## VI.    EVIDENTIARY RULING CLAIMS

Starnes has a heavy burden to obtain habeas relief on the basis of state court evidentiary rulings. "Rulings on the admission or exclusion of evidence in state trials rarely rise to the level of a federal constitutional violation." *Nebinger v. Ault*, 208 F.3d 695, 697 (8th Cir. 2000). Normally, "[a] state court's evidentiary ruling is a matter of state law," and federal courts "may examine the ruling in a habeas proceeding only to determine whether the asserted error denied due process." *Bailey v. Lockhart*, 46 F.3d 49, 50 (8th Cir. 1995); *see also Osborne v. Purkett*, 411 F.3d 911, 917 (8th Cir. 2005). "To establish a due process violation warranting federal habeas relief, [a habeas petitioner] must prove that the [evidentiary] error was 'so gross' . . . 'conspicuously prejudicial' . . . or otherwise of such magnitude that it fatally infected the trial and failed to afford [petitioner] the fundamental fairness which is the essence of due process." *Kerr v. Caspari*, 956 F.2d 788, 789 (8th Cir. 1992), *quoting Rainer v. Department of Corrections*, 914 F.2d 1067, 1072 (8th Cir. 1990), *cert. denied*, 498 U.S. 1099 (1991); *see also*

*Bounds v. Delo*, 151 F.3d 1116, 1119 (8th Cir. 1998) (same). Starnes must show that the error "affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different.'" *Gee v. Groose*, 110 F.3d 1346, 1350 (8th Cir. 1997) (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995)); *see also Harris v. Bowersox*, 184 F.3d 744, 752 (8th Cir. 1999) (same), *cert. denied*, 528 U.S. 1097 (2000).

### A.     Darlene Peach's Testimony

Starnes claims that he was denied due process because Darlene Peach's ("Peach") testimony, that she saw a black man in a white t-shirt and black cap in the neighborhood where the Campbell/Petersen burglary took place, should not have been admitted because it was irrelevant and unfairly prejudicial. The Minnesota Court of Appeals concluded that the trial court's determination was not an abuse of discretion; "D.P.'s testimony was relevant because it provided circumstantial evidence that appellant was near the site of the burglary, and the testimony posed no danger of unfair prejudice." *Starnes*, 2014 WL 211304 *3. Starnes' concern in his habeas petition is that the Minnesota Court of Appeals "affirmed the petitioner's conviction using evidence that contradicts the transcripts." Petition, ECF No. 1 at 7. Starnes argues that Peach did not identify a time of day in her testimony. *Id*. The Minnesota Court of Appeals stated that Peach "told police that around midnight the night of the burglary she saw a black man wearing a white t-shirt and baseball cap leave her apartment building" and that surveillance footage showed a "black male wearing a white t-shirt at the [gas] station sometime between midnight and 1:00 a.m." *Starnes*, 2014 WL 211304 at *1, *3 (emphasis added). These times were estimates, and although Peach did not specify a time at trial, Officer Desjardin testified that Peach told him she saw a black man leave her apartment complex "about midnight" on the night of the burglary. *Id*. at *1; Tr. 168-70 (Peach); Tr. at 164 (Desjardin). The times did

not serve as a basis for the Minnesota Court of Appeals decision, which merely concluded that the "testimony was offered to establish that [Peach] saw a man matching appellant's description leaving her apartment complex *on the night of the burglary*." *Starnes*, 2014 WL 211304 at *3 (emphasis added). Moreover, the Minnesota Court of Appeals concurred with the trial court's conclusion that "appellant's concerns could be addressed on cross-examination." *Id*. Starnes did not cross-examine Peach about the exact time she saw the man leaving her building. Therefore, this testimony and Starnes' concern about the time of day did not constitute a due process violation.

### B.    BP Video Footage

Starnes next contends that the trial court's admission of evidence of surveillance footage at the BP gas station in the vicinity of the Campbell/Petersen burglary denied him due process. He argues that because the footage was taken at 12:57 a.m. central standard time, it does not match the time that Campbell says that her credit card was used at 1:00 a.m. eastern standard time. Brief, ECF No. 4 at 3-6. Starnes seems concerned that both the trial court and the appeals court relied on this evidence inappropriately. The Minnesota Court of Appeals encompassed the timeframe Starnes references, however, when it stated that "[t]he video showed a black male wearing a white t-shirt at the station *sometime between midnight and 1:00 a.m. the night of the burglary*." *Starnes*, 2014 WL 211304 at *4 (emphasis added). Additionally, as to the trial court's evidentiary ruling, the Minnesota Court of Appeals stated that "it was relevant circumstantial evidence connecting a man from the burglary location with use of the stolen card at a nearby gas station." *Id*. at *4. Significantly, the "video was being used to prove the charge of financial-transaction-card fraud, of which the appellant was acquitted." *Id*. at *4. The

Minnesota Court of Appeals also noted that "appellant was free to point out the tape's flaws through cross-examination of the gas station worker who laid foundation for the video." *Id*. at *4.

The Minnesota Court of Appeals found the trial court's evidentiary rulings to be correct and this Court cannot disagree with that finding on constitutional grounds. Starnes' own brief reveals that his concerns about the testimony reflect concerns that could have been addressed on cross examination. As to the issue of time of day, although it may be true that the testimony conflicted as to precise times, the jury was free to resolve those conflicts. We will "presume that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Sera v. Norris*, 400 F.3d 538, 547 (8th Cir. 2005) (recognizing that evidence might present "conflicting inferences" but that state court did not unreasonably apply federal law).

These evidentiary rulings did not violate Starnes' constitutional right to due process. The rulings of the Minnesota Court of Appeals upholding the admission of the Darlene Peach testimony and the BP video footage are not contrary to, or an unreasonable application of, settled Supreme Court precedent. The only way this Court would reverse that decision would be if it viewed the Minnesota Court of Appeals' decision to be so out of the ordinary that all fairminded jurists would agree that the state court was wrong on constitutional grounds. *See Harrington v. Richter*, 562 U.S. 86, 102 (2011). Starnes has not met this exacting standard.

Additionally, Starnes' arguments regarding the time of day certain events occurred do not rise to the level of being an "unreasonable determination of the facts in light of the evidence presented at trial" under § 2254(d)(1). "[E]ven if 'reasonable minds reviewing the record might disagree' about the finding in question 'on habeas review that does not suffice to supersede the trial court's determination.'" *Wood v. Allen*, 558 U.S. 290, 301 (2010) (quoting *Rice v. Collins*,

546 U.S. 333 (2006)).  Finally, "a determination of a factual issue made by a State court shall be presumed to be correct" under § 2254(e)(1). This Court defers to the state courts based on the habeas standards of review of both the evidentiary rulings and the factual findings of the lower courts.

## VII.    RIGHT TO A COMPLETE DEFENSE

"It is well established that the Fourteenth Amendment, along with the Sixth Amendment, guarantee criminal defendants the opportunity to present a complete defense, including the right to present relevant testimony."  *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999), *cert. denied*, 528 U.S. 1141 (2000).  "The Constitution does not, however, guarantee that criminal defendants may call every witness they choose." *Khaalid v. Bowersox*, 259 F.3d 975, 978 (8th Cir. 2001), *cert. denied*, 535 U.S. 1021 (2002), citing *United States v. Scheffer*, 523 U.S. 303, 308 (1998). "An accused 'does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Khaalid*, 259 F.3d at 978 (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)); *see also Nevada v. Jackson*, 133 S.Ct. 1990, 1992-93 (2013) (deferring, under AEDPA, to state court's decision to exclude certain defense evidence).

Starnes claims that the trial court and prosecutor intimidated his defense witness, Timothy Thigpen ("Thigpen"), by ensuring that Thigpen knew his Fifth Amendment rights before he testified about the stolen Mitsubishi car and forged checks.  The Minnesota Court of Appeals stated that "there is no evidence in the record that either the prosecutor or the judge made threats to the witness as appellant claims."  *Starnes*, 2014 WL 211304 at *4.  Starnes argues that Thigpen's decision to plead the Fifth to some questions "amounted to him being and

feeling threatened and afraid of the testimony that he may have given." Petition, ECF No. 1 at 9. The Minnesota Court of Appeals interpreted Thigpen's decision to testify in spite of the Fifth Amendment warnings, however, as a sign that "the government did not substantially interfere with his decision." *Starnes*, 2014 WL 211304 at *4. In fact, the Minnesota Court of Appeals stated that the prosecutor and the judge had "an obligation to make sure that the witness's Fifth Amendment rights were not violated." *Id*. at *4. For the behavior of the prosecutor and the judge to rise to the level of a due process violation requires more than advice from a lawyer about a witness' right against self-incrimination. The Minnesota Court of Appeals pointed out that the prosecutor did not even have any contact with the witness. *Id*. at *4. The judge appointed a separate lawyer to advise Thigpen. Thigpen answered all of the defendant's questions except he refused to testify as to where he got the checks that he attempted to forge and whether he knew they were stolen in a burglary. Tr. at 351, 356.

Nonetheless, it is unclear how the answers to two questions regarding the burglary of the Ray home would have helped Starnes. Starnes was not charged with stealing the Mitsubishi car from the Ray home, passing forged checks from the Ray home, or with the burglary of the Ray home. In his brief, Starnes argues that the answers to these questions would "establish evidence to show that someone else was responsible for the burglary." Brief, ECF No. 4 at 12. But the questions only referred to the burglary of the Ray home—a burglary for which Starnes was not charged.

The Minnesota Court of Appeals' conclusion that "appellant was not denied a meaningful opportunity to present a complete defense" is reasonable under AEDPA's standard. In sum, Thigpen's decision to testify signaled that he was not at all intimidated and knew exactly which

questions he did not want to answer. Finally, how the answers to the questions at issue would have helped Starnes' defense with regard to the specific charges against him is unclear.

## VIII.   PROSECUTORIAL MISCONDUCT CLAIM

Like the evidentiary rulings discussed above, a prosecutorial misconduct claim must rise to the level of a due process violation. *Parker v. Matthews*, 132 S.Ct. 2148, 2153 (2012). "To amount to a due process violation, improper remarks by a prosecutor must be 'so egregious that they fatally infect [] the proceedings and render[] [a defendant's] entire trial fundamentally unfair.'" *Stringer v. Hedgepeth*, 280 F.3d 826, 829 (8th Cir. 2002), *cert. denied*, 537 U.S. 909 (2002) (quoting *Moore v. Wyrick*, 760 F.2d 884, 886 (8th Cir.1985); using pre-AEDPA standard of review); *see also Mack v. Caspari*, 92 F.3d 637, 643 (8th Cir. 1996), *cert. denied*, 520 U.S. 1109 (1997), quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). To establish a due process violation, the Supreme Court requires more than an undesirable remark or even a universally condemned comment. *Darden*, 477 U.S. at 181. "A petitioner 'must show that there is a reasonable probability that the error complained of affected the outcome of the trial— i.e., that absent the alleged impropriety the verdict probably would have been different.'" *Stringer*, 280 F.3d at 829 (quoting *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir.1995) (citations omitted)); *see also Mack*, 92 F.3d at 643. Significantly, "the *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations." *Parker v. Matthews*, 132 S.Ct. 2148, 2155 (2012) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) (rejecting Sixth Circuit's grant of habeas based on prosecutorial conduct where prosecutor's comments were not sufficiently inflammatory).

Starnes argues that the prosecutor failed to abide by a pretrial order requiring that the prosecutor not talk to the officer who found the Mitsubishi car in the parking lot about how someone had rummaged through the stolen vehicle. Starnes states in his brief that he was concerned that "the jury could have implied that [Starnes] was using the stolen vehicle to commit a burglary because the officer had said so. And if he used the car to do one burglary he could have used the car to commit the burglary he's charged for." Petition, ECF Doc. 1 at 12. At trial the officer testified that "a photograph of the interior of the car contained 'the black hat of the suspect that we were looking for that was involved in motor vehicle tampering, tampering of a motor vehicle in a garage.'" *Starnes*, 2014 WL 211304 at *5. At the time of that testimony Starnes did not object but moved for a new trial due to prosecutorial misconduct. *Id*. The Minnesota Court of Appeals stated that "[t]he district court denied the motion for a new trial on the grounds that the officer's testimony was harmless because it was related to the third-degree burglary charge, of which appellant was acquitted. But a review of the record indicates that the officer's testimony was actually related to acts never charged"—presumably the theft of the car. *Id*. at *5. The Court of Appeals concluded that the prosecutor's question did not elicit the prohibited testimony but rather that the officer "spontaneously offered" the testimony and the prosecutor did not pursue it at all during trial. *Id*. at *5. The Court concluded that this sole basis for prosecutorial misconduct was insufficient. The prosecutor merely asked: "If you can describe what's in each of those photos?" Tr. at 225. The officer then stated that one was a photo of the "black hat of the suspect that we were looking for that was involved in motor vehicle tampering, tampering of a motor vehicle in a garage." *Starnes*, 2014 WL 211304 at *5. The Court of Appeals concluded that the prosecutor moved on and did not belabor the testimony. *Id*. at *5.

The Court therefore concluded that "even if there was error in the officer's testimony, it did not result from prosecutorial misconduct and was harmless." *Id*. at *5.

Nothing about the various determinations of the state trial and appellate courts rise to the level of a denial of due process nor does the one answer to the prosecutor's one question amount to misconduct that affected the outcome of the trial. Even if this Court disagreed with the Minnesota Court of Appeals' finding that the prosecutor's conduct was accidental or that the error was harmless (which it does not), it would still have to clear the AEDPA's hurdle for habeas review. This Court cannot conclude that the state court's finding was unreasonable, and all fairminded jurists would so agree. Starnes' prosecutorial misconduct argument that one witness' unelicited and fleeting testimony about a stolen vehicle for which Starnes was not charged falls far short of this standard.

## IX.    CERTIFICATE OF APPEALABILITY

A § 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted, unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, the Court finds it unlikely that any other court, including the Eighth Circuit Court of Appeals, would decide Starnes' claims any differently than they have been decided here. Starnes has not identified, and the Court cannot independently discern, anything novel,

noteworthy, or worrisome about this case that warrants appellate review. It is therefore recommended that Starnes should not be granted a COA in this matter.

## X.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Starnes' application for habeas corpus relief under 28 U.S.C. § 2254, (ECF No. 1), be **DENIED**;

2. This action be **DISMISSED WITH PREJUDICE**; and

3. Starnes should **NOT** be granted a Certificate of Appealability.

Dated:  August 7, 2015                                   *s/Steven E Rau*
                                                         Steven E. Rau
                                                         U.S. Magistrate Judge

### NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.